UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

ROBERT JOSEPH McMANUS,          . Civil No. 2:21-cv-02285-CFK
                                .
            Plaintiff           .
                                . James A. Byrne, U.S. Courthouse
        vs.                     . 601 Market Street
                                . Philadelphia, PA  19106
WALGREENS COMPANY, ET AL,       .
                                . May 10, 2022
            Defendants          . 8:47 a.m.
. . . . . . . . . . . . . . . . .

            TRANSCRIPT OF CIVIL JURY TRIAL - DAY EIGHT
              BEFORE THE HONORABLE CHAD F. KENNEY
               UNITED STATES COURT DISTRICT JUDGE

APPEARANCES:

For The Plaintiff:      HOHN & SCHEUERLE
                        BY:  STEPHEN A. SCHEUERLE, ESQ.
                             RICHARD K. HOHN, ESQ.
                        1700 Market St., Suite 3442
                        Philadelphia, PA  19103

For Defendant Walgreens: LICHFIELD CAVO LLP
                        BY:  ROBERT I. SANZO, ESQ.
                        1515 Market St., Suite 1220
                        Philadelphia, PA  19102

For Defendant Bilco:    COZEN & O'CONNOR
                        BY:  JACQUELINE PROMISLO, ESQ.
                             MICHELLE AMANDA MICHELSON, ESQ.
                        1650 Market Street, Suite 2800
                        Philadelphia, PA 19103


Audio Operator:         Chris Kurek

Proceedings recorded by electronic sound recording, transcript
                produced by transcription service.

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**
**(609) 586-2311     Fax No. (609) 587-3599**

# I N D E X

|                 | PAGE |
|-----------------|------|
| JURY QUESTIONS  | 4    |
| VERDICT         | 22   |

1      THE CLERK:  All rise, please, court is back in

2  session.

3      THE COURT:  All right, good morning everyone.

4      ATTORNEYS:  Good morning, Your Honor.

5      THE COURT:  Okay.  We're back on the record in

6  McManus. Counsel is present.  I'm going to bring the jury in.

7  Chris, you want to bring the jury in briefly.

8      THE CLERK:  Sure.

9          (Jury in @ 8:49:30)

10      THE CLERK:  All rise please.

11      THE COURT:  You can all remain standing, you don't

12  have to sit, because I'm going to send you right out.  I just

13  wanted to note that we're on the record.  That all the jurors

14  are present, and then you now can go back out. Chris will bring

15  the verdict slip back in. And you can reconvene and start your

16  jury deliberations now.  Okay?  All right, and thank you

17  everyone.

18          (Jury out @ 9:50:40)

19      THE COURT:  Okay.

20          (Counsel speaking among themselves)

21          (Recording paused @ 8:53:24)

22          (Recording resumed @ 9:02:57)

23          (Counsel speaking among themselves)

24          (Judge enters courtroom @ 9:07:33)

25      THE CLERK:  Court is back in session.

1    THE COURT:  We're on the record.  So the jury has two

2  questions.  Will plaintiff still have worker's compensation,

3  wage payments and medical bill coverage through the original

4  worker's comp claims with Brine's outside of this lawsuit?  And

5  will worker's claim lien have to be paid back if he gets

6  nothing from the lawsuit?

7    MALE ATTORNEY:  The answer to number one I believe is

8  yes.  Number two is definitely no.

9    MALE ATTORNEY:  I'm not so sure that number one is

10 yes, Your Honor, but I agree that number two is no.  The Court

11 can tell the jury there's been no evidence about what worker's

12 comp is going to do in the future.

13    FEMALE ATTORNEY:  If, Your Honor, it's our

14 understanding that there will be --

15    THE COURT:  I can't hear you.

16    FEMALE ATTORNEY:  There would be no reason for the

17 worker's compensation payments to stop. They had been paying to

18 date. So it's our understanding that there are -- and we can

19 certainly  case law or confirm that. But I think that the jury

20 needs to know that he is.  And it's our understanding that he

21 will continue to get worker's compensation payments or wages,

22 and for his medical benefits.

23    MALE ATTORNEY:  Well that's not exactly true.

24 Workers get cut off all the time from their comp benefits.  The

25 fact that he hasn't been cut off now, a year and a half,

1  doesn't suggest that he's going to receive it for the rest of

2  his life.

3      MALE ATTORNEY:  Your Honor, I think what we can say

4  factually is that he is receiving worker's comp benefits today.

5  Nobody can predict the future of course.  We have no reason to

6  know or believe that he'll be cut off. But it's accurate to say

7  he's receiving them today.

8      THE COURT:  Why is it that they should be considering

9  these issues at all?

10     MALE ATTORNEY:  I can't answer that, Your Honor.  I

11  don't know what they're thinking.

12     THE COURT:  I'm going to tell them that these are two

13  issues that they should not be considering.

14     FEMALE ATTORNEY:  Yes, Your Honor, I do think that, I

15  understand your position with number one. But for the, will the

16  worker's claim lien have to be paid back if he gets nothing

17  from this lawsuit, I do think it's important that the jury know

18  that he does not, because plaintiffs put this in front of --

19  it's important that they know that that is not on the board if

20  he, if he is not awarded any damages here.  I think that's

21  critical.

22     MALE ATTORNEY:  We'll accept Your Honor's comment.

23  There's been no testimony about what happens if the jury stones

24  him.

25     MALE ATTORNEY:  There has been testimony that the

lien must be paid back. So I think that the jury must understand that only pertains to if there's an award.

FEMALE ATTORNEY: Plaintiff put that front and center in front of the jury.

MALE ATTORNEY: Right.

MALE ATTORNEY: This is all extraneous as Your Honor properly noted.

THE COURT: Pardon me?

MALE ATTORNEY: This is all extraneous to the case, as Your Honor properly noted.

FEMALE ATTORNEY: Your Honor, if we may, I don't believe it's extraneous, because the plaintiff's counsel brought it up, we did not. And they brought it and put it in front of the jury, and said to their expert, will this need to be paid back. And the fact that they are now thinking that it would to be paid back whether or not he receives an award, is absolutely critical.

(Counsel speaking among themselves)

THE COURT: All right, so this is how I'm going to answer it. As to number one, I say, as to number one. It is a question that you need not be considering in determining liability or damages. The answer to that question is irrelevant to your decisions.

Two, as to number two, this would also typically be irrelevant except the lien was stipulated to here. If there is

1 no recovery the lien would not need to be paid back.  So that's

2 what's going back out to the jury.

3          MALE ATTORNEY:  Yes, sir.

4          FEMALE ATTORNEY:  Your Honor, sorry, just I think it

5 would also be important, since they've asked number one, to

6 perhaps tell the jury that he is getting worker's compensation

7 wage payments and medical coverage now.

8          THE COURT:  I'm answering the question they asked.

9          FEMALE ATTORNEY:  Thank you.

10          THE COURT:  And I'm not going to say that.

11          FEMALE ATTORNEY:  Okay.

12          THE COURT:  All that could have been brought up. And

13 I'm sure decisions were made as to why you put worker's comp on

14 in front of the jury with the lien.  And then why nothing

15 really during trial was discussed beyond that.  And that's why

16 we now have questions.  Chris, you can send that in.

17          And I don't see how that is relevant, that he's

18 currently receiving it.  Should, I didn't think that worker's

19 comp lien should have been in front of them in the first place.

20 But the parties stipulated to it so it's in front of them.

21          (Recording paused @ 9:16:23)

22          (Recording resumed @ 9:54:40)

23          THE CLERK:  Counsel, I'm just going to read in to the

24 record what the questions are.  Sometimes the Judge does it,

25 sometimes he doesn't.  So I'm just going to do it not before he

1  walks in the courtroom.

2          So just correct me if I'm wrong.  But we're back on

3  the record.  And the jury has a few questions.  Second series

4  of questions. Question number one, can we see the answer to the

5  complaint where Bilco said a key would modify the hasp and

6  cause an unsafe condition.  Line 27 and 28, question mark.

7          Question number two, are the initial answers to the

8  complaint by the defendants very broad and intended to cover

9  every potential scenario that could be the case.

10         And question number three, are the initial answers to

11 the complaint to cover situations that may be true or else they

12 can't be used as a defense later.

13         Is that how counsel reads the questions?

14         MALE ATTORNEY:  Yes.

15         THE CLERK:  All right, I'll be back in a minute.

16                 (Counsel speak among themselves)

17                (Judge enters courtroom @ 10:02:55)

18         THE CLERK:  Court is back in session.

19         THE COURT:  All right, for the record, counsel is

20 present.  Jury has three questions.  Can we see the answer to

21 the complaint where Bilco said a key would modify the hasp and

22 cause an unsafe condition.  Paragraphs 27 and 28.

23         Question two, are initial answers to the complaint by

24 defendants very broad and intended to cover every potential

25 scenario that could be the case.

1          And three, are the initial answers to the complaint

2     to cover situations that may be true or else they can't be used

3     as a defense later.  Counsel?

4          FEMALE ATTORNEY:  Yes, Your Honor, I don't believe

5     that the answer to the complaint was marked as an exhibit.

6     What I think that the jury needs to know is that a defendant

7     would be barred from raising any defense that is not raised in

8     its initial concern from the defense (indiscernible 10:04:00)

9          MALE ATTORNEY:  Number one, that's not true.  Number

10    two, it was Exhibit P-80 was entered yesterday without

11    objection.  And number three, we had submitted --

12          THE COURT:  It was P what?

13          MALE ATTORNEY:  P --

14          THE COURT:  What was?

15          MALE ATTORNEY:  P-80, the answer to the complaint

16    with affirmative defenses by Bilco.

17          THE COURT:  All right.

18          MALE ATTORNEY:  And thirdly, I had submitted to the

19    Court some authority that what is enclosed in here is

20    essentially an admission by Bilco of its knowledge at the time

21    that this was filed. And Ms. Promislo I know spoke to the jury

22    about legal matters in her closing.  I think that this entire

23    thing should go out and the jury will get a real flavor for how

24    to distinguish between broad answers of denial. And the

25    specific allegations that they made in paragraphs 27 and 28 of

1 the affirmative defenses.

2 FEMALE ATTORNEY: Your Honor, I think it's really

3 important that the jury also know that at the time a complaint

4 is filed, that the parties, including the plaintiffs, don't

5 know all the facts. So they've also included allegations that

6 the LadderUP is defective. Friday afternoon during Mr. Joyce's

7 testimony was the first time I knew that that was not going to

8 be --

9 THE COURT: Friday afternoon what?

10 FEMALE ATTORNEY: Was the time during Mr. Joyce's

11 testimony that we were told that they were not pursuing that.

12 So this was in initial pleading --

13 THE COURT: Who was not pursuing that?

14 FEMALE ATTORNEY: The plaintiffs. They were no

15 pursuing their claim that the LadderUP was defectively

16 designed. That's part of their complaint.

17 FEMALE ATTORNEY: And additionally, Your Honor,

18 affirmatively defenses are not admissions. I did respond to

19 the email that Mr. Hohn sent. All the cases he cited only

20 refer to answers and not affirmative defenses. And also if you

21 look at Rule 8, it's clear that admissions are a different

22 separate category from affirmative defenses.

23 THE COURT: Right. Yes, I don't think it's an

24 admission but it's an affirmative defense and it's a position,

25 it's a position that the defendant Bilco took. And as a

1  position that defendant took at the time it is a position that

2  the jury can know it's an affirmative defense that they took

3  that they eventually backed off of.

4         FEMALE ATTORNEY:  Well, Your Honor, I think it would

5  be appropriate to also tell the jury that any affirmative

6  defense that is not raised in the affirmative defense cannot

7  then be used later in a matter, so that I think their question

8  was, are the initial answers --

9         THE COURT:  And what is the nature of that

10 affirmative defense that you've raised in that allegation that

11 would be raised later, that if you just left it out and said,

12 this was not our fault, if it was anybody else's fault it was

13 Bilco's fault. I mean that's a very specific allegation that I

14 think it's an affirmative defense, and so I think we can send

15 27 and 28 out.  It was read to the jury.

16        Number two, I can say affirmative -- counsel will

17 file affirmative defenses that cover broad areas as to number

18 two.

19        MALE ATTORNEY:  Prior to investigation being done,

20 which is why they're broad.

21        THE COURT:  Pardon me?

22        MALE ATTORNEY:  Affirmative defenses will be filed

23 by defendants covering broad areas due to lack of investigation

24 at the time of filing.

25        THE COURT:  No, I this is a very specific affirmative

1 defense. And quite frankly, quite frankly, in terms of

2 affirmative defense it was also used as a crossclaim.  A

3 crossclaim against Walgreens.  It was incorporated into the

4 crossclaim.  And as a result of it being part of the crossclaim

5 the crossclaim has never been dropped. The crossclaim still

6 exists even though you didn't litigate it. That's why, that's

7 what gives this more impact because you held onto that defense.

8 You never dropped it.  It's still part of this case.

9 FEMALE ATTORNEY:  Well yes, Your Honor, it -- as you

10 know legally, should Walgreens have settled with the plaintiffs

11 we need to be able to legally pursue that.

12 THE COURT:  Turn around and point the finger at

13 Walgreens. And that's what the plaintiff is saying.  These

14 people --

15 FEMALE ATTORNEY:  Well --

16 THE COURT:  These people joined together but look

17 what they said up front. And then you had an opportunity to say

18 okay, we back off of that position.  But to this day you really

19 haven't backed off this position. Do you want me to tell this

20 jury, there's a crossclaim and guess what, if Walgreens

21 settled, they would have pursued this very theory in front of

22 this very jury to this very day.  Should I tell that to the

23 jury?

24 FEMALE ATTORNEY:  We don't know what we would have

25 done had Walgreens settled.  So I don't think that would be

1  appropriate.  But I do think --

2          THE COURT:  Sure you do, you already said you would.

3          FEMALE ATTORNEY:  I think --

4          THE COURT:  So you think what, I'm trying to capture

5  this now so the jury understands that it is an affirmative

6  defense, it's a position that you took that you backed off of

7  during trial. That's what I'm going to tell them.

8          FEMALE ATTORNEY:  Your Honor, I think it would also

9  be important that the jury know that any affirmative defenses

10 not raised with initial pleading of affirmative defenses --

11         THE COURT:  I didn't do the research on this.  And I,

12 just because you listed this as an affirmative defense, doesn't

13 mean necessarily that it's an affirmative defense.  It could

14 have been -- it didn't even have to be listed and you could

15 have tried that in front of this jury.  And it's not

16 necessarily waived, and you know it's not necessarily waived

17 because when litigation comes in, and you were to file a motion

18 and say, Judge, we took depositions.  And we want to raise this

19 affirmative defense because this came up in discovery.  That's

20 always, always, admitted. So I'm not going to then now give

21 them a lecture on first year civil procedure.

22         FEMALE ATTORNEY:  Well, Your Honor, it is a legal

23 requirement, I believe, and we'd be happy if you'd like us to

24 come up with case law that any defenses not raised are waived.

25 And we are always cautious and over inclusive before any

1  discovery is done.  And --

2        THE COURT:  You're talking to the right Judge, okay.

3  Because the right Judge here in this courtroom, when this Judge

4  sees 28 affirmative defenses, I just let them go.  You talk to

5  some other Judges in this courtroom and they're striking every

6  affirmative defense because you go through them and that Judge

7  says, I don't know what they're talking about, but this is not

8  this case. And then they say, if your discovery picks up

9  something else, file an amendment.  So you're talking generics

10 now.

11       So I'm going to answer this question, give me one

12 second.

13       MALE ATTORNEY:  Can I add something before Your Honor

14 puts the pen on there?

15       THE COURT:  Yes.

16       MALE ATTORNEY:  They have listed 30 affirmative

17 defenses and they cover laches, foreseeability, all these

18 generic things.  These two are the only ones that are specific

19 and they identify a specific thing that a specific defendant

20 did. And so I think that the whole thing should go out to the

21 jury so they can put it all in context.

22       FEMALE ATTORNEY:  The rest of the affirmative

23 defenses were not brought up to the jury.  So I don't think

24 that that is necessary.  But as I said, I do think it is, and

25 while they weren't stricken, I think it's important that the

1   jury know that if you don't raise affirmative defenses they are

2   waived.

3            MALE ATTORNEY:  That is not true.

4            FEMALE ATTORNEY:  We can get authority on that, Your

5   Honor.

6            MALE ATTORNEY:  But this is not an affirmative

7   defense, Ms. Promislo.

8            FEMALE ATTORNEY:  It is, it is, it was brought up to

9   the jury as an affirmative defense.  It is an affirmative

10  defense.  You can now rename it something else.  That's how you

11  introduced it to the jury.  And it is my very clear

12  understanding, and as I said we're happy to file support for

13  that if you would like us to, that if we do not raise an

14  affirmative defense it is waived.

15           THE COURT:  Okay, this is what I've written to the

16  jury.  To answer your question, I will send out the answer and

17  affirmative defenses.  Affirmative defenses are different than

18  answers.  Answers are admissions.  Affirmative defenses are not

19  admissions.  However, the affirmative defense raised by an

20  attorney for a party is a position the party raised.  On paper,

21  Bilco still maintained this act affirmative defense through

22  trial.  However, through trial testimony, they did not maintain

23  this position.

24           MALE ATTORNEY:  Your Honor, I don't think that's

25  accurate.  Bilco did not maintain that position.  It was on

1  paper of course but they never --

2      THE COURT:  On paper, that's what I said on paper

3  Bilco still maintained this affirmative defense.  They did,

4  they have, they still have.  They have a crossclaim.  Counsel

5  even just said --

6      MALE ATTORNEY:  True.

7      THE COURT:  -- if you settled, they had the

8  opportunity to pursue it.  That has not changed because Bilco

9  and Walgreens decide to form an alliance and defend that case,

10  that's fine but it does not change the pleadings in this case.

11  So your objection is noted.

12      FEMALE ATTORNEY:  Your Honor?

13      THE COURT:  This will go out to the jury as I stated

14  it because it's factually accurate.

15      FEMALE ATTORNEY:  Your Honor?

16      THE COURT:  Send it out.

17      FEMALE ATTORNEY:  If we could please --

18      THE COURT:  What?

19      FEMALE ATTORNEY:  -- also address the number three,

20  which they've asked, we did not raise an affirmative defense,

21  if it could not be used as a defense later and that is my clear

22  understanding of the law, that we needed to raise issues in our

23  affirmative defense or they could not be raised later.  That is

24  why we included it.

25      MALE ATTORNEY:  My only response to that is

affirmative defenses are specifically identified in the Rules

of Civil Procedure and they cover laches and possibility of

performance, seven or eight different things.  Bilco --

THE COURT:  Let's pull up the rule.  What rule?

MALE ATTORNEY:  I'm looking for my book now, Your

Honor.

FEMALE ATTORNEY:  Yes.  Your Honor, we've got it

here, on affirmative defenses, which states that in general in

responding to a pleading a party must affirmatively state any

avoidance or affirmative defense including, and yes, it does

include laches, license, payment assumption of the risk, res

judicata but it is not an exhaustive list but a party must

affirmatively state any avoidance or affirmative defense.  This

is an affirmative defense.  It may be more specific than the

others but if it was not raised it would be waived and that is

why without doing any investigation, Your Honor, we were and

always are inclusive.

MALE ATTORNEY:  Well, Your Honor, there are 18

affirmative defenses listed in Rule 8.  There's no requirement

that Bilco point a finger at Walgreens less than lose the

opportunity to do it.  They've asserted a crossclaim.  The

specific allegations they made is not an affirmative defense

that would be waived if not raised under Rule 8.

FEMALE ATTORNEY:  Plaintiff's counsel did not raise

the crossclaims with the jury.  He raised the affirmative

1  defenses.  This is a nonexhaustive list and it says party must
2  affirmatively state any affirmative defense.  It does list some
3  but it also requires that a party affirmatively state any.  Any
4  avoidance or affirmative defense including.  We needed to raise
5  our affirmative defense or it would have been waived and that's
6  why it's included.  And again the crossclaim was not raised
7  with the jury.  I think it's appropriate that they no longer
8  have been waived had it not been raised.

9       THE COURT:  All right.  Any further I go I'm going to
10 be educating the jury in terms of this because, and what I have
11 counsel often raises many possible affirmative defenses as
12 possible as can be seen in their other affirmative defenses out
13 of an abundance of caution.  The affirmative defenses are often
14 quite generic but sometimes they have specifics.

15      MALE ATTORNEY:  Your Honor?

16      THE COURT:  Yes.

17      MALE ATTORNEY:  I don't want to interrupt, are you
18 done?  I don't want to interrupt you.

19      THE COURT:  Pardon?

20      MALE ATTORNEY:  Are you still writing?  I don't want
21 to interrupt you.

22      THE COURT:  Go ahead.

23      MALE ATTORNEY:  The crossclaim is not going out,
24 correct?

25      THE COURT:  The crossclaim, pardon?

1        MALE ATTORNEY:  The crossclaim is not in evidence,

2  it's not going out --

3        THE COURT:  See, then that's the problem, you know.

4  Now, we open the whole door.  Why should the crossclaim go out

5  because you maintained it right from the end.  You never came

6  to sidebar the whole case and you never said, Judge, we're

7  dropping our crossclaim.

8        MALE ATTORNEY:  It's not in evidence, Judge.  The in

9  evidence is the answer to affirmative defenses, period.

10        MALE ATTORNEY:  That's not correct, Your Honor.

11  Yesterday the Court instructed us to enter everything into

12  evidence.  I did.  There was no objection by counsel.  I

13  entered this entire pleading which was identified as pleading

14  number 10 on the docket.  You know Mr. Gustanson (phonetic)

15  actually --

16        THE COURT:  I'm not going to send the crossclaim out.

17  The whole position though is you adopted that language in your

18  crossclaim as part of your pleading in the crossclaim.  And so

19  in terms of fairness, I mean your side has gotten more than its

20  fairness in this.

21        MALE ATTORNEY:  Your Honor?

22        THE COURT:  Now, maybe the case reflective of how it

23  went in but just flip this and if you were on the other side

24  and tell me how you would be jumping up and down about how you,

25  in a pleading would have been stuck with that pleading, not as

1  an affirmative defense, but of adopting it as part of your

2  claim against Walgreens.

3       FEMALE ATTORNEY:  Your Honor?

4       THE COURT:  So this is -- go ahead.  So this is how

5  I'm going to answer it.  I'm bending over backwards to be fair

6  to your side, FEMALE ATTORNEY, because again, it could arguably

7  be said that this was more than affirmative defense.  You used

8  it as a foundation as a pleading in your claim against

9  Walgreens that they had to answer.  So you have my two answers

10 that are going out.  You have more to say, go ahead.

11      FEMALE ATTORNEY:  I'm not sure.  Is Your Honor

12 addressing the issue with respect to this being waived, any

13 affirmative defense being waived if it is not raised?

14      THE COURT:  No.  I answered the way I'm going to

15 answer.  Do you want me to write more?  Because if you want me

16 to write more, I will.

17      FEMALE ATTORNEY:  I think we're --

18      THE COURT:  I have more to say.

19      FEMALE ATTORNEY:  Thank you.

20      THE COURT:  To that jury about it being waived and

21 not being waived and quite frankly, there's one thing to say

22 oh, laches.  There's another thing to specifically say they

23 were at fault with facts.

24      FEMALE ATTORNEY:  I understand, Your Honor.

25      MALE ATTORNEY:  Your Honor, did you say the

1  crossclaim is not going out?

2          THE COURT:  It's not going out.  And your objection

3  is noted for the record, that it's not going out.

4          MALE ATTORNEY:  I understand, Your Honor.

5          THE COURT:  Because I'm not going to mislead this

6  jury about what this case is all about.  On the other hand,

7  they made that statement and the statement did maintain

8  throughout this whole trial whether, -- and they never came to

9  anybody and said, oh, it's withdrawn so we can streamline the

10 case or understand where it's going.  And now it's like well,

11 the whole trial, we'll distance ourselves from that even though

12 we maintained it.  But now it's brought up from the jury, oh,

13 well, let the jury know that's generic.  It's not a generic.

14 So send both answers out, I read them for the record.

15         MALE ATTORNEY:  Can we have copies of what's going

16 out, the answers?

17         THE COURT:  Yes.  You can make copies, you can have

18 copies of what's going out.  You want to read it first?

19         MALE ATTORNEY:  Sure.

20         THE COURT:  You can make sure I read them correctly.

21         MALE ATTORNEY:  Sure.  Thank you, sure.

22         UNIDENTIFIED:  Judge, are we going to just these two

23 parts --

24         THE COURT:  No, all the answer and affirmative

25 defenses.  You're not sending out the crossclaim where it

1  adopts all the affirmative defenses.

2          UNIDENTIFIED:  Okay.

3          THE COURT:  You can, did you cut off the last page?

4          UNIDENTIFIED:  If you need a clip.

5          UNIDENTIFIED:  Sure.

6              (Recording paused @ 10:30:32 a.m.)

7              (Recording resumed @ 11:56:07 a.m.)

8          THE CLERK:  All rise, please.  The Court is back in

9  session.

10         THE COURT:  All right.  We're back on the record.  My

11 understanding is the jury has a verdict.  We haven't brought

12 the jury in.  Just on a personal note, I want to recognize the

13 excellent and zealous representation of the attorneys on behalf

14 of all their clients.  Also, I want to note when verdicts come

15 in, they're very intense so prepare yourself, even for people

16 that are used to taking verdicts so just keep that in mind and

17 you should be prepared for a reaction that you have.  And also

18 on behalf of the attorneys and myself, sympathy could play no

19 role in how we conducted these proceedings.  It didn't play any

20 role but I think we do want to acknowledge as everybody said,

21 Mr. McManus did suffer a significant injury and I just wanted

22 to acknowledge that to him and to his parents that we all have

23 that level of sympathy despite the fact that we all have to go

24 about our business, okay?  So with that, I think we can bring

25 the jury in.

1     THE CLERK:  All rise for the jury, please.

2          (Jury in @ 12:05:36 p.m.)

3     THE COURT:  My understanding is that you reached a

4  verdict?  All right, would the foreperson stand?  Chris will

5  just take the sheet for a moment and hand it to me so I can

6  review it for a moment.  You'll remain standing, I'll hand it

7  back to you.

8     COURT OFFICER:  Foreperson of the jury, please remain

9  standing.  Members of the jury having agreed upon the verdict

10 based upon the verdict sheet from the Court, will the

11 foreperson please respond to the following.  In the case of

12 Robert McManus versus Walgreens Company, et al., number 21-2285

13 on the verdict slip, question number one, was defendant,

14 Walgreen Eastern Company Inc. negligent yes or no?

15    FOREPERSON:  No.

16    COURT OFFICER:  Question number three, was defendant,

17 Bilco Company's product defective in its design or in its

18 warnings, yes or no?

19    FOREPERSON:  No.

20    COURT OFFICER:  Question number five, was defendant,

21 Bilco Company negligent, yes or no?

22    FOREPERSON:  No.

23    COURT OFFICER:  And this is the completed verdict

24 slip from the jury, signed and dated on May the 10th, 2022.

25    MALE ATTORNEY:  Request to poll the jury, Your Honor.

1           THE COURT:  All right, you may be seated.

2           COURT OFFICER:  Juror number, please arise.  Was the

3   verdict that was presented in open court the verdict that was

4   agreed to by the jury?

5           JUROR:  Yes, it was.

6           COURT OFFICER:  Thank you.  You can be seated.  Juror

7   number two, was the verdict that was presented in open court

8   the verdict that was agreed to by the jury?

9           JUROR:  Yes.

10          COURT OFFICER:  Thank you.  Juror number three, was

11  the verdict that was presented in open court the verdict that

12  was agreed to by the jury?

13          JUROR:  Yes.

14          COURT OFFICER:  Number four, was the verdict that was

15  presented in open court the verdict that was agreed to by the

16  jury?

17          JUROR:  Yes.

18          COURT OFFICER:  Thank you.  Juror number five, was

19  the verdict that was presented in open court the verdict that

20  was agreed to by the jury?

21          JUROR:  Yes.

22          COURT OFFICER:  Thank you.  Juror number six, was the

23  verdict that you presented in open court the verdict that was

24  agreed to by the jury?

25          JUROR:  Yes.

1          COURT OFFICER:  Thank you.  You can be seated.  Juror

2    number seven, was the verdict that was presented in open court

3    the verdict that was agreed to by the jury?

4          JUROR:  Yes, it was.

5          COURT OFFICER:  Thank you.  Juror number eight, was

6    the verdict that was presented in open court the verdict that

7    was agreed to by the jury?

8          JUROR:  Yes.

9          COURT OFFICER:  Thank you.  You can be seated.

10         THE COURT:  Please get the verdict slip, Chris.

11   Counsel, is there anything else before I release the jury?

12         MALE ATTORNEY:  Your Honor, if the jury would indulge

13   us for five minutes to speak to them, we're done if they're

14   interested.

15         THE COURT:  Other than that, is there anything else?

16         MALE ATTORNEY:  No, Your Honor.

17         FEMALE ATTORNEY:  No, Your Honor.

18         THE COURT:  All right.  Ladies and gentlemen of the

19   jury, once again on behalf of the attorneys, the parties,

20   myself personally and all the Judges in the Eastern District of

21   Pennsylvania, I want to thank you for your service.  It was a

22   really big commitment, and the fact that you were here on time,

23   for lunch on time, all those things really made a long trial

24   probably go a little bit shorter than it would have gone.  So

25   we really do appreciate it.

1        With that, I'm going to release you from your duties
2   and your oath as jurors at this time.  I'm going to dismiss you
3   into the jury room.  I will be in a few minutes to talk to you,
4   okay?  Thank you.
5             THE CLERK:  All rise, please.
6                   (Jury out @ 12:10:46 p.m.)
7             THE COURT:  I will tell the jurors, I will instruct
8   the jurors if they would like to talk to counsel, they can talk
9   to counsel but if they don't want to talk to counsel, they
10  don't have to, all right?  That would be just counsel they
11  would talk to, no one else, all right?
12            FEMALE ATTORNEY:  Would we then, if they do, would we
13  then go to the jury room or would they come back?
14            THE COURT:  No, they'll be dismissed in the regular
15  course of business.  You could see them in the elevator or
16  downstairs when they come out, okay?
17            MALE ATTORNEY:  Your Honor, thanks very much.
18            MALE ATTORNEY:  Thank you, Judge.
19            FEMALE ATTORNEY:  Thank you, Your Honor.
20                      *  *  *  *  *
21
22
23
24
25

# C E R T I F I C A T I O N

I, TRACY GRIBBEN, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Tracy Gribben          DATE:  June 1, 2022

TRACY GRIBBEN

J&J COURT TRANSCRIBERS, INC.