**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT MCMANUS,** | : | **CIVIL ACTION** |
| *Plaintiff*, | : | |
| | : | |
| **v.** | : | |
| | : | |
| **WALGREENS COMPANY, et al.,** | : | |
| *Defendants.* | : | **NO.  21-cv-2285** |
| | : | |

**<u>MEMORANDUM</u>**

**KENNEY, J.**                                                        **AUGUST 30, 2022**

## I.    INTRODUCTION

Plaintiff Robert McManus ("Plaintiff") brought this action against Defendants Walgreens Eastern Co. and the Bilco Company (individually "Walgreens" and "Bilco" and collectively "Defendants"), for claims of negligence, as to both defendants, and strict product liability, as to Bilco, stemming from Plaintiff's fall off a 20-foot fixed ladder at the Walgreens store in Glendora, NJ. After seven days of trial, the jury rendered a verdict in favor of Defendants on all counts. Now, Plaintiff requests this Court order a new trial, alleging that misconduct by Defendants' lead counsel, Attorney Robert Sanzo and Attorney Jaqueline Promislo, and evidentiary rulings made by this Court necessitate the granting of a new trial. This Court finds that the actions of Attorneys Sanzo and Promislo were in flagrant disregard for the Federal Rules of Civil Procedure, their representations to this Court were at best evasive and misleading, and at a critical point in the trial Defendants failed to provide the bare-minimum respect and candor owed to Plaintiff McManus, his attorneys, and this Court. This Court further finds that Defendant

Walgreens's expert witness, Jody DeMarco, provided materially inaccurate statements to the

Court, calling into question his suitability and credibility as an expert witness. However, the

Court does not find that Plaintiff was prejudiced by Defendants' conduct. At trial, the Court

struck the testimony at issue, and the Court presumes that the jury followed its instructions.

Furthermore, upon review of the entire trial record, the Court finds that Plaintiff and Defendants

presented extensive and often duplicative testimony and argument on the issue of whether the

padlock could be opened safely. And although the padlock issue was significant, it was only one

of several issues litigated in the case, each of which received substantial testimony and argument.

Considered in this context, DeMarco's testimony was not "devastating" to Plaintiff and did not

prevent Plaintiff from fully and fairly litigating his case. Viewed alone, the actions of Walgreens,

Bilco, and DeMarco are astonishing, given the professionalism anticipated by the Court for those

acting as officers of the court and highly seasoned litigators who should pride themselves on

their ethics and credibility. Nonetheless, the Court cannot find that DeMarco's testimony was

prejudicial in regard to the final outcome, that is, a jury's unanimous verdict in favor of

Defendants after seven days of trial. Additionally, the Court finds that that the testimony of

Roger Joyce was not admitted in error. For these reasons, the Court DENIES the motion for a

new trial.

## II.    BACKGROUND

### A.  Pre-Trial Procedural History

On April 6, 2021, Plaintiff Robert Joseph McManus filed a complaint in the Court of

Common Pleas of Philadelphia County bringing claims of negligence, strict product liability, and

breach of warranty against Walgreens Eastern Co., Inc. and the Bilco Company.[1] *See generally* ECF No. 1 at 6-27. Plaintiff's claims arise from an incident on November 11, 2020, when Mr. McManus, an HVAC technician, fell twenty (20) feet from the top of a fixed ladder at the Glendora, New Jersey Walgreens store and sustained personal injuries. *See generally* ECF No. 1. Affixed to the ladder was a Bilco Ladder-Up device, and at the top of the ladder was a Bilco roof hatch locked with a padlock. Plaintiff claims he fell when attempting to get the padlock open, which, Plaintiff argues, required him to take both of his hands off of the ladder. Plaintiff's Complaint alleges that Defendants are liable for Plaintiff's injuries, pain and suffering, and loss of future wages for designing the roof hatch in a defective and unreasonably dangerous manner, creating a dangerous condition by adding the lock to the roof hatch, failing to inspect the ladder, roof hatch, and lock, failing to provide a safe means to access his worksite, failing to warn of the dangerous condition on the ladder, and failing to warn of the danger created by putting a padlock on the roof hatch. *See generally* ECF No. 1 at 16-27.

On May 19, 2021, Walgreens removed this action under 28 U.S.C. §§ 1332, 1441. ECF No. 1 at 7-9. The parties completed discovery, and Bilco and Walgreens filed motions for summary judgment. ECF Nos. 52, 54. This Court denied the motions. ECF No. 68. The parties filed several motions in limine to exclude various evidence at trial. ECF Nos. 50, 51, 73, 74, 75, 76, 80, 81, 82, 84. One of Plaintiff's motions sought to preclude any testimony that no one before Plaintiff had fallen from a Bilco roof hatch, contending that Bilco did not provide any information regarding the process by which they track accidents. ECF No. 75. After consideration of the facts and arguments, this Court denied the motion. ECF No. 102.

### B. The April 29 - May 10 Trial

---

[1] The breach of warranty claim was only brought against Defendant Bilco Company and was voluntarily dismissed on June 3, 2021. ECF No. 9.

Trial began on April 29, 2022, and the jury rendered its verdict on May 10, the eighth day of trial. Plaintiff called 12 witnesses, which included 7 expert witnesses. Dr. Michael Troiano and Dr. David Fink testified regarding the extent of Plaintiff's physical and psychological injuries and his probable future medical expenses. John Whitty and Gary Brock provided expert testimony regarding relevant OSHA regulations and specifically testified regarding the ladder, roof hatch, and lock at the Walgreens store, including the issue of whether Plaintiff could have opened the lock safely with one or two hands. *See* ECF No. 140 at 15:17-17:1, 18:3-13, 19:18-20:3, 24:15-22, 38:25-39:11. Plaintiff called representatives and employees from Bilco and Walgreens to testify regarding the roof hatch and lock and whether Defendants had conducted any testing or inspection beforehand. The representative for Bilco, Roger Joyce, specifically testified about his past experiences opening a padlock safely while climbing a vertical ladder. ECF No. 153 at 11:9-13, 12:10-12, 13:10-14:1, 17:4-15, 20:18-22:9, 35:10-36:8. Regarding damages, Steven Gumerman, Chad Staller, and Alex Karras testified to Plaintiff's future employment outlook, lifetime loss of earnings, and lifetime medical costs. Plaintiff Robert McManus testified himself and specifically discussed whether it was possible to open the lock safely with one or two hands. ECF No. 165 at 139:18-140:4. Plaintiff's final witnesses were Fred Wilkie and Mike Kucenic, investigators hired by the Defendants to surveil the Plaintiff.

Defendants recalled Bilco corporate designee Roger Joyce, as well as eight other witnesses, including six experts. Maria Babinetz and James Stavros testified regarding the post-accident employability of Plaintiff and Plaintiff's lifetime costs. Rachel Kelly provided expert testimony on the lock and roof hatch, including the issue of opening the lock with one or two hands. Scott McMullen, corporate designee for Walgreens, also testified regarding the ladder at the Walgreens store and Walgreens's understanding that their contractors would know how to

safely climb the ladder and would alert Walgreens if an unsafe condition existed. Alycia Auletto, another employee of Walgreens, testified regarding the day of the accident. Dr. Eric Schwartz testified regarding Plaintiff's injury, impairment and loss of use, and future medical costs. Roger Joyce testified on behalf of Defendant Bilco and again provided testimony regarding opening the lock safely with one hand.  ECF No. 154 at 29:1-9. Eugenia Kennedy testified, addressing the lock and the safety of opening it while on the ladder. And on the final day of trial, Jody DeMarco provided expert testimony about OSHA regulations and whether it was possible to safely open the lock. ECF No. 150 at 34:2-9, 36:25-37:6. Jody DeMarco also testified to his own personal experience opening the lock. ECF No. 150 at 17:14-19:20. After counsel for Walgreens admitted that this experiment took place during trial and was not disclosed to Plaintiff, the testimony regarding his personal experience opening the lock was stricken. ECF No. 150 at 55:8-22. The jury began deliberations on May 9. On May 10, the jury returned a verdict for Defendants on all counts.

### C.  Plaintiff's Motion for New Trial

On May 27, 2022, Plaintiff filed a motion for a new trial. ECF No. 160. Plaintiff claims there are four grounds upon which a new trial should be granted: (1) the alleged misconduct of defense counsel and expert witness Jody DeMarco, (2) that the Court erred when it failed to exclude the entirety of DeMarco's testimony, (3) that the Court erred when it admitted Roger Joyce's testimony regarding the lack of prior accidents or complaints, and (4) that the Court erred when it admitted the Joyce testimony that contradicted one of Bilco's affirmative defenses. Defendants filed responses in opposition to the motion for new trial. ECF Nos. 167, 168.

#### i.  *DeMarco's Testimony*

On May 9, 2022, the final day of trial, Jody Demarco testified for Defendant Walgreens. ECF No. 150. DeMarco testified that during one of his visits, he climbed the ladder and opened the padlock at the Walgreens store.

> I did not find any issue with the ladder from the bottom to the top. It was safe. [… T]he first time I went out there, the lock that everybody has been talking about, […] it was just hooked over but the lock was not engaged. […] I went there another time there it was - - where the lock was actually locked. And I went to the manager, Mike, and asked him for the keys, and then went up the ladder. […] I climbed the ladder the say (sic) way, hand over hand. And then when I got to the top of the ladder there the padlock was, I threw the hasp. I got the key and - -.

ECF No. 150 at 17:14-19:20. Plaintiff objected, contending that the information DeMarco presented was outside the scope of his report. *Id.* at 19:20-21. This Court overruled the objection, and DeMarco continued to explain that he was able to safely open the lock with one hand. *Id.* at 17:14-22:8, 26:22-27:22. Defense counsel presented two photographs that DeMarco took while unlocking the padlock. *Id.* at 21:5-16, 26:22-27:22. On cross-examination, Plaintiff inquired about DeMarco's site visits:

> Q: I was wondering if you'd be kind enough to direct me to the page in your report where you talk about all these site inspections you conducted.
>
> […]

6

A: [...] That's on page seven, kind of midway down. And I was
    also out there on (sic) February of 2021, which I forgot to
    list in my report:

Q: Okay. So February of 2021?

A: Correct.

Q: March of 2021?

A: Yes.

Q: And August of 2021?

A: Yes. Then I - -

Q: Okay. Have you been out there since then?

A: Yes.

Q: When did you go last?

A: Last week, May 2nd.

*Id.* at 37:14-38:9. Plaintiff then asked DeMarco where the experiment with the key and lock was

mentioned in his expert report. ECF No. 150 at 38:14-40:24. DeMarco responded, "[i]t's not

mentioned in my report." *Id.* at 40:25. When asked if he decided on his own to visit the site on

May 2 and conduct his experiment, DeMarco responded,

A: "When I -- after I digested these reports and saw the direction
    that it was going, that this could be an issue, I thought this
    would probably be a good idea if I go out there and do it."

[…]

Q: So Bilco and Walgreens, they didn't know you were going out

on this fact finding mission by yourself after the trial

began?

A: I did not notify them, no.

Q: When did you tell them that you had been out there on May

2nd?

A: I think I told them today. I think they found out just now.

ECF No. 150 at 43:1-6, 43:24-44:6. After Plaintiff's counsel asked when Defendants received

DeMarco's photographs to prepare to show them at trial, DeMarco admitted that he had sent the

photographs on or around May 4, five days prior to his testimony at trial. *Id.* at 44:12-16, 44:23-

24. Plaintiff's counsel again asked DeMarco when he informed Walgreens's counsel that he

visited the site on May 2, and DeMarco responded, "I don't know if I talked to [Attorney Sanzo]

that day (May 4) or if I talked to him the day after (May 5)." *Id.* at 44:25-45:2. This Court then

sent the jury out of the courtroom and asked the witness to explain the circumstances of his May

2 visit.

The Court: So you just went out there on your own? No instruction

from counsel?

A: I went out there on my own, correct.

*Id.* at 46:14-16. After DeMarco testified to the Court that he communicated with counsel after

the May 2 experiment but before the final day of trial, the Court ordered that those

communications be made part of the record and sealed. *Id.* at 47:7-8. The Court began a lengthy discussion with counsel regarding DeMarco's May 2 experiment, and after several minutes, counsel for Walgreens, Attorney Sanzo, corrected the record and admitted that he knew before May 2 that DeMarco was going to visit the site. *Id.* at 50:22-23. When the Court asked Attorney Sanzo if he sent DeMarco to the site, Attorney Sanzo stated that he did not send DeMarco, that DeMarco voluntarily made the visit, and that it was DeMarco's idea. *Id.* at 50:25-51:5. Upon consideration of Walgreens's counsel's failure to notify Plaintiff's counsel about the May 2 visit and failure to produce the photographs, the Court instructed the jury to disregard the testimony regarding the May 2 visit:

> So I'm going to strike a portion of the witness's testimony. Okay?
> So all we know up through after the third report, that this witness
> has been out there three times. Nobody knows that he took it upon
> himself on May 2 to go out there. So he comes into this courtroom,
> we don't know that. And so there is no chance to prepare for what
> was said and no chance to prepare for the whole purpose of going
> out there and doing further things. So the whole portion of the
> testimony where this witness demonstrates what he did to climb up
> that ladder and do it with one hand, all of that, the photographs
> themselves he referred to, all of that is stricken. So you disregard
> that. I am not saying the other testimony that was before but that
> portion of the testimony and those exhibits and those photographs
> are stricken. Okay?

ECF No. 150 at 55:8-22. Plaintiff's counsel continued the cross-examination of DeMarco, and Defendant Walgreens conducted re-direct. *Id.* at 55:24-77:12. At the conclusion of trial, this Court again instructed the jury that any testimony the jury was instructed to disregard is not evidence and cannot be considered. ECF No. 163 at 39:13-17, 40:7-8.

a.   Post-Trial Production of DeMarco Communications

On May 11, 2022, Plaintiff filed a motion for "expeditious response to the Court's order during the trial regarding Defendant's liability expert, Jody DeMarco." ECF No. 142. The next day, upon consideration, this Court:

> ORDERED that each Defense Counsel of record shall file an
> individual submission by 12 p.m. on May 16, 2022 of the relevant
> records, that is, all emails, texts, and other communications
> regardless of format, regarding, leading up to, and including the
> decision by Jody DeMarco to visit the site on May 2, 2022, the
> scheduling of the May 2 visit, as well as all emails regarding the
> visit that came afterward.

ECF No. 145. Defense counsel produced documents with redactions, claiming attorney client privilege and attorney work product. The Court "ORDERED that unredacted copies of both submissions shall be hand-delivered to this Court's chambers by 12 p.m. on May 17, 2022, for the Court's in-camera inspection." ECF No. 149. "The Court [found] that the redactions are protected by neither attorney-client privilege or the attorney work product doctrine, and instead relate to the mechanics in bringing about DeMarco's expert experiment on May 2, 2022." ECF No. 152. The Court gave notice "that the Court will file the unredacted submissions of Attorney

Sanzo and Attorney Promislo on the record on May 20, 2022, at 4 p.m." ECF No. 152. On May

20, 2022, the Court filed the unredacted submissions to the record. ECF Nos. 157-159.

b.   Communications Regarding May 2 Visit

In an email time-stamped May 1, 2022, 12:03 PM, Attorney Sanzo asked DeMarco, "did

you open the padlock when you were at the store?" ECF No. 158 at 9. DeMarco responded by

asking Attorney Sanzo to "please call me on my cell phone (Redacted) (sic) to discuss." ECF No.

158 at 8 (time-stamped May 1, 2022, 12:14 PM).  Approximately two hours later, Attorney

Sanzo sent a reply to DeMarco's previous email:

> You are cleared to go to the store tomorrow afternoon. I alerted the
>
> manager that you would be there. One more important thing:
>
> *Please do not tell anyone at the store exactly what you plan to do*
>
> *on the ladder and make sure no one is watching you climb the*
>
> *ladder.* That shouldn't be a problem. Thanks.

ECF No. 158 at 8 (time-stamped May 1, 2022, 2:21 PM) (emphasis added). Two days later,

DeMarco sent the two photos of his hand and the lock via text. ECF No. 158 at 10-16. At this

time, Attorney Sanzo informed Attorney Promislo that "these are the two photographs taken by

Jody Demarco, as he opened the subject lock with one hand. I was about to send them to

[Plaintiff's counsel], but as he has not been sending us any photos in advance, I won't." ECF No.

158 at 16 (time-stamped May 3, 2022, 8:18 PM). To which Attorney Promislo responded,

"Agreed. It's also rebuttal to theirs. He should be great to end with. Their expert W didn't even

go there, their other did and didn't open lock- but we did." ECF No. 159 at 3 (time-stamped May

3, 2022, 8:32 PM).

### ii.   *Joyce Testimony Regarding Prior Accidents or Complaints*

On May 6, 2022, the sixth day of trial, Roger Joyce testified as the corporate designee for

Bilco. Mr. Joyce has a degree in engineering, began working for Bilco in 1979 and held multiple

roles there including Plant Manager, Vice President of Manufacturing, Vice President of

Engineering, and coordinated the company's response to product liability litigation. *See* ECF No.

154 at 3:23-4:4, 7:21-22, 9:22, 11:7, 30:5-21, and 31:1-25. Although Joyce retired in 2016, he

continues to serve as Bilco's corporate designee in litigation and has testified for Bilco fifteen or

sixteen times since retirement. ECF No. 154 at 30:22-31:23.

On direct examination, Defense counsel asked Joyce whether he was aware of any

complaints involving the roof hatch, and Plaintiff's counsel objected.

> Q: [… S]o of the 850,000 roof hatches, of this model, that Bilco
>
>     Company has sold, are you aware of any complaints
>
>     regarding the padlock hasp component of this roof hatch?
>
> A: I am aware of no complaints, in, in that entire population, over
>
>     70 years, with regard to the padlock hasp.
>
> Mr. Scheuerle: Objection, - -
>
> The Court: Overruled.
>
> Q: Except for this?
>
> A: Except for this matter. Correct.

ECF No. 154 at 22:7-18.

### iii.   *Joyce Testimony Regarding Bilco Affirmative Defense No. 28*

The same day at trial, after Joyce testified that he acts as the liaison between Bilco and

counsel retained by Bilco for pending litigation and that he worked specifically on this litigation,

ECF No. 154 at 34:2-35:13, Plaintiff's counsel asked Joyce about an affirmative defense Bilco asserted in its pleading:

> Q: I would like to read the defense that you raised. And which was
> filed with this court, sir, and maybe you could explain it for
> us. "Any and all damages claimed by Plaintiff against Bilco
> were the result of Co-Defendant Walgreens' or another
> third party's acts/or omissions in modifying the product at
> issue by choosing to add and/or install the padlock, which
> created a hazardous and dangerous condition, as opposed to
> securing access to the product at issue by other, safer
> methods/means, including, but not limited to, an electronic
> locking device." Have you understood what I've just said?
>
> A: I understand it, but this is the first time I have heard it.

ECF No. 154 at 35:14-36:1 (quoting ECF No. 10 at 18-19). On re-direct, defense counsel asked Joyce if he had ever seen ECF No. 10 and if he had been consulted on this document before it was prepared. ECF No. 154 at 39:14-24. Joyce testified that he had not seen it, nor was he consulted about its production. ECF No. 154 at 39:21-24. Plaintiff objected:

> Mr. Scheuerle: Objection, Your Honor. It's Certified.
>
> The Court: Overruled.
>
> Mr. Scheuerle: Yes, sir.
>
> The Court: And it, it is certified. It's, it's part of the record, and it
> is admissible and you can read from that,
>
> [...]

The Court: But he is just asking about his knowledge of it.

[…]

The Court: And you can follow up on that, the knowledge of that.

ECF No. 154 at 39:25-40:13. Defense counsel continued their questioning.

Q: Did Walgreens modify the Bilco roof hatch, to the best of your

knowledge?

A: No.

Q: Did Walgreens do anything wrong, in your opinion, by putting

on the subject padlock onto the hasp of the roof hatch?

A: No

ECF No. 154 at 41:5-10. Plaintiff made a second objection:

Mr. Scheuerle: Objection, your honor. This is their statement. This

is Bilco's statement. Now he is cross-examining him on his

own statement.

Mr. Sanzo: It's not his own statement. It's a lawyer's defense in a

plea.

ECF No. 154 at 41:11-42:8. This Court allowed the questioning to continue. Afterwards, the

Court read the Federal Rule of Civil Procedure 11(b) to the jury. Plaintiff's counsel was

permitted to refer to the affirmative defense during closing arguments. ECF No. 163 at 81:16-20.

Upon receiving a question from the jury, the Court provided a copy of Bilco's affirmative

defenses and instructed the jury:

To answer your question, I will send out the answer and

affirmative defenses. Affirmative defenses are different than

14

answers. Answers are admissions. Affirmative defenses are not

admissions. However, the affirmative defenses raised by an

attorney for a party is a position the party raised. On paper, Bilco

still maintained this act (sic) affirmative defense through trial.

However, through trial testimony, they did not maintain this

position.

ECF No. 161 at 15:15-23.

## III.    STANDARD OF REVIEW

The court may, on motion, grant a new trial "for any reason for which a new trial has

heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59. "The decision to

grant or deny a new trial is 'confided almost entirely to the discretion of the trial court.'" *Shanno*

*v. Magee Indus. Enterprises, Inc.*, 856 F.2d 562, 567 (3d Cir. 1988) (citing *Allied Chemical*

*Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36 (1980)). The court may provide relief from judgment and

grant a new trial for mistake, surprise, newly discovered evidence, fraud, misrepresentation, or

misconduct by an opposing party, or any other reason that justifies relief. *See* Fed. R. Civ. P.

60(b); *see, e.g.*, *Forrest v. Beloit Corp.*, 424 F.3d 344, 362 (3d Cir. 2005) (granting new trial

based on improperly admitted testimony); *Fineman v. Armstrong World Industries, Inc.*, 980

F.2d 171, 209-12 (3d Cir. 1992) (affirming district court grant of new trial based on attorney

misconduct); *Draper v. Airco, Inc.*, 580 F.2d 91, 97 (3d Cir. 1978) (granting new trial based on

attorney misconduct); *Ballarini v. Clark Equipment Co.*, 841 F. Supp. 662, 667 (E.D. Pa. 1993)

(granting new trial based on attorney misconduct). The court's "latitude on a new trial motion is

broad when the reason for interfering with the jury verdict is a ruling on a matter that initially

rested within the discretion of the court, e.g. evidential rulings." *Klein v. Hollings*, 992 F.2d

1285, 1289-90 (3d Cir. 1993) (citing *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 187 (3d Cir. 1990)). However, the court shall not disturb a judgment or grant a new trial "[u]nless justice requires otherwise." Fed. R. Civ. P. 61. The court "must disregard all errors and defects that do not affect any party's substantial rights." *See id.*

To grant a new trial, the court must first determine that an error was made at trial and that the error "was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." *Bhaya v. Westinghouse Elec. Corp.*, 709 F. Supp. 600, 601 (E.D. Pa. 1989), *aff'd,* 922 F.2d 184 (3d Cir. 1990) (citation omitted). The court may grant a new trial for attorney misconduct if "the movant … establish[es] that the adverse party engaged in […] misconduct and that this conduct prevented the moving party from fully and fairly presenting his case." *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983); *see also Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1341-46 (5th Cir. 1978) (holding that because Defendant withheld information that would have substantively changed the way the plaintiff would have responded, a new trial was justified). A new trial will be granted only where the allegedly improper statements or conduct make it 'reasonably probable' that the verdict was influenced by the resulting prejudice." *Forrest*, 424 F.3d at 351 (citing *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 363 (3d Cir. 1999)); *see also Burdyn v. Old Forge Borough*, 330 F.R.D. 399, 416 (M.D. Pa. 2019). The moving party must establish that the opposing attorneys engaged in misconduct, rather than mere aggressive advocacy, and that the misconduct affected a substantial right in the context of the entire trial record. *Burdyn*, 330 F.R.D. at 416 (citations omitted).

## IV.   DISCUSSION

### A.  Defendants' Failure to Disclose DeMarco's May 2 Visit Did Not Prejudice Plaintiff.

Plaintiff argues that defense counsel committed misconduct and prevented Plaintiff from fully and fairly presenting his case at trial. First, Plaintiff argues that counsel for Walgreens, Attorney Sanzo, failed to immediately correct DeMarco when DeMarco gave false testimony in court on May 9, 2022. Second, Plaintiff argues that Attorney Sanzo willfully failed to disclose the May 2 visit and the photographs, in violation of the Federal Rules of Civil Procedure, to preserve the surprise until the last day of trial. According to Plaintiff, Attorney Sanzo's conduct substantially prejudiced Plaintiff, prevented Plaintiff from fully and fairly litigating his case, and warrants granting a new trial.

Walgreens and its counsel seek to excuse their actions by arguing that the Federal Rules of Civil Procedure do not require that *every* expert opinion be in a report, and by claiming that the fact of Walgreens's expert's last-minute, secret experiment was merely "an explanation of the basis of his written opinion" and an "amplification" of his written opinion. ECF No. 167 at 8, 12. Walgreens also argues that the issue is closed because the offending testimony was struck and because the testimony was "redundant," "of little significance," and had "little if any evidentiary weight." *Id.* at 9. Additionally, Walgreens argues that Plaintiff behaved similarly with his own witnesses, that Walgreens's conduct was a "sound strategical move" intended to avoid creating trial witnesses, and that there is no prejudice because the timing of DeMarco's experiment is immaterial. *Id.* at 14-15. Defendant Bilco makes the same arguments and adds that Bilco had no obligation to disclose anything to Plaintiff because DeMarco was not Bilco's

witness. Finally, Defendants argue that because the offending testimony was stricken, there was no prejudice.

The Court will begin with Defendant Walgreens's arguments. Walgreens cites *Hill v. Reederei F. Laeisz G.M.B.H., Rostock*, 435 F.3d 404 (3d Cir. 2006), for its claim that there is no bright-line rule that *every* opinion provided at trial must be contained in an expert report. However, Walgreens fails to recognize that *Hill* involved a substantially different context than the instant case. Unlike in *Hill*, Plaintiff does not argue that DeMarco expressed a new opinion at trial, but that DeMarco created an entirely new factual basis for his opinion and created substantive evidence by visiting the site during trial and conducting his experiment alone. Plaintiff argues that he could not reasonably anticipate the new substantive evidence, introduced by DeMarco, or be expected to anticipate it, because Defendant Walgreens concealed the experiment until the expert testified about the experiment on the final day of trial. Walgreens purposely withheld these facts and photographs, which were in Walgreens's possession nearly a week before they were revealed.[2] Whereas in *Hill* the expert offered a new opinion in response to facts or testimony provided at trial, here Walgreens and DeMarco offered entirely new facts and photographs, all of which constituted substantive evidence, in response to opinions it had notice of months in advance, and did so in a manner intended to maximize the surprise to Plaintiff.

Federal Rule of Civil Procedure 26 requires parties to "without awaiting a discovery request, provide to the other parties … a copy – or a description by category and location – of all documents electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use

---

[2] The Court notes that although Defendant Walgreens revealed the existence of the experiment and the photographs on the last day of trial, Walgreens and DeMarco did not reveal the fact that the experiment was conducted on May 2 until questioned by Plaintiff and the Court.

would be solely for impeachment."[3] Fed. R. Civ. P. 26(a)(1)(A)(ii). For expert witnesses, parties must produce an expert report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2)(B). Parties must make these expert disclosures "at least 90 days before the date set for trial" or "if the evidence is intended solely to contradict or rebut evidence on the same subject matter … within 30 days after the other party's disclosure." Fed. R. Civ. P. 26(a)(2)(D). Parties are also required to provide "an identification of each document or other exhibit … the party expects to offer [at trial] and those it may offer if the need arises," and make these disclosures "at least 30 days before trial." Fed. R. Civ. P. 26(a)(3)(A)(iii). Parties have a duty to supplement information included in an expert's report, and any additions or changes must be disclosed at least 30 days before trial. Fed. R. Civ. P. 26(a)(3), (e)(2). If a party fails to supplement its report, "the party is not allowed to use that information or witness to supply evidence … at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

"It is clear that Rule 26 was designed, in part, to eliminate the element of surprise in civil litigation." *Burdyn v. Old Forge Borough*, 330 F.R.D. 399, 410 (M.D. Pa. 2019). Furthermore, this Court is empowered to order a new trial or relieve a party from judgment for surprise or misconduct by an opposing party. Fed R. Civ. P. 59, 60. Walgreens claims that the May 2 experiment was merely an explanation for the basis of DeMarco's written opinion or an

---

[3] Determining whether evidence is used "solely for impeachment" at times can be a difficult inquiry, but that is not the case here. DeMarco's experiment and photographs are substantive evidence that provide direct support for Defendant Walgreens's principal defense—that the hatch and padlock set-up were safe to use. To find that Defendant can fail to disclose any evidence that in part rebuts Plaintiff's case-in-chief and then wait to reveal such evidence until the last day of trial, claiming rebuttal, would render the rules of discovery meaningless.

amplification of his opinion. This argument is illogical on its face. DeMarco's written opinion was produced to Plaintiff months prior to trial. An experiment conducted on May 2, 2022 cannot form the basis for an opinion in a report dated January 28, 2022. To suggest otherwise is absurd. Similarly, DeMarco's clandestine climb up the ladder and the photographs he took are not an "amplification" of his opinion—they are new substantive evidence created after trial had commenced and form an entirely new basis for his pre-existing opinion. This Court finds that Walgreens's counsel's actions clearly violated the spirit and letter of the Federal Rules of Civil Procedure and effected an unfair surprise. The remaining question is whether those actions were so prejudicial that they prevented Plaintiff from fully and fairly presenting his case.

To this question, Defendant Walgreens claims in its response to the Plaintiff's Motion that the new evidence is "redundant," "of little significance," and had "little if any evidentiary weight." This argument directly contradicts Walgreens's position at trial and is overstated. The fact that DeMarco climbed the ladder and opened the lock is not an inconsequential fact. At trial, Attorney Sanzo acknowledged that this issue was "obviously a focus of trial," and claimed that this testimony was "a significant incident," "a very important fact," and "such an important fact." ECF No. 150 at 47:18, 49:22-25, 53:7-8. DeMarco is the only witness in this case, other than Plaintiff, who climbed the ladder in the Walgreens store where the accident occurred and then opened the lock. Defense counsel clearly thought this evidence was significant at the time. *See* DeMarco Tr. at 50:13-21, 52:1-4, 54:5-8; *see also* ECF No. 159 at 3 (Attorney Promislo in email explaining that "[DeMarco] should be great to end with. Their expert W didn't even go there, their other did and didn't open the lock- *but we did*" (emphasis added)).

However, Defendants are correct that in many ways this testimony was redundant. By the time DeMarco testified about whether the lock could be opened safely, the jury had heard

testimony on this issue seven times. Three of Plaintiff's witnesses (four including Joyce) testified regarding the mechanics of opening the lock while on the ladder. And three of Defendants' witnesses had already testified about this issue. Although most of these witnesses had never opened the specific lock in question, they testified at length about the process one could use to open the lock and why or why not it was safe. When DeMarco testified that the lock could be opened safely with one hand and while maintaining three points of contact with the ladder, the jury had already heard similar testimony multiple times. Additionally, the one-handed opening of the lock was not the only issue in the case or the only defense advanced by Walgreens and Bilco. There was expert testimony and demonstration that the lock could also be safely opened with two hands as Plaintiff had done dozens of times in the past. Defense witnesses also testified to their understanding that climbing a vertical ladder was part of the contractor's job and their expectation that the contractor would be trained to safely climb the ladder and would not continue climbing if it was unsafe. DeMarco's testimony and any prejudice it could cause to Plaintiff must be understood in this context.

Walgreens also attempts to reframe its decision not to notify Plaintiff or supplement the record as a "sound strategical move." This argument only lends further support to Plaintiff's motion. One of the central purposes of the discovery rules contained in the Federal Rules of Civil Procedure is to prevent unfair surprise such that the opposing party has no realistic opportunity to put that testimony to the test. Walgreens admits, and the communications confirm, that its counsel, Attorney Sanzo, instructed DeMarco to not tell anyone what he was doing and make sure no one observed him doing it. ECF No. 158 at 8. Walgreens also admits that its intent was to avoid creating any other witnesses for trial. Walgreens's "sound strategical move" and its decision to conceal the fact of the experiment from Plaintiff's counsel gave Plaintiff McManus

no realistic opportunity to prepare for the testimony and no ability to rebut or test it. This type of unfair surprise is the exact type of conduct the discovery rules were intended to prevent.

Walgreens's next argument, that the timing of the experiment is immaterial, is another red herring. It is the combination of the timing of the experiment and the choice not to disclose the experiment at all that Plaintiff claims constitutes unfair surprise and misconduct. The fact that the timing of the experiment does not make any material fact more or less true is irrelevant. The experiment itself, substantive evidence which Defendant intentionally hid from Plaintiff until the final day of trial, supported Defendants' primary theory and argument of the case, i.e., that the ladder and lock set-up was safe and easy to use. Defendants' continued efforts to mislead the Court about the focus of the case and the importance of this testimony is a further example of their refusal to provide the candor and minimum respect expected and required in federal court litigation. It is not speculative at all that if the defense had revealed the experiment and the photographs to the Court prior to DeMarco's testimony, the Court would not have allowed the evidence.[4]

Regarding Defendant Bilco's defense for its actions, although it is true that DeMarco was not Defendant Bilco's witness, it is also true that Defendant Bilco coordinated its defense with

---

[4] The Court carefully managed this case, making several significant evidentiary rulings before and during trial. Through its rulings, the Court sought to hold the parties and their zealous advocates to the Federal Rules of Civil Procedure and the notions of fairness enshrined therein. When Plaintiff sought to present testimony from Plaintiff's parents, who had never been identified as witnesses until the week before trial, Defendants objected on the basis of surprise. ECF No. 116 at 4. The Court sustained the objection, and the parents did not testify. When presented with their own possibility of creating surprise, with evidence that Defendants at multiple times admitted was important and significant, Defendants did not provide notice or opportunity to the Court to consider whether such evidence was admissible. When DeMarco initially testified about the May 2 experiment, neither he nor Attorney Sanzo explained that the experiment had occurred only a few days earlier. The Court overruled Plaintiff's first objection at trial based on the Court's mistaken impression that DeMarco was testifying to an experiment conducted during discovery. If the Court had known when the experiment took place, it would have sustained the objection.

Walgreens for the entire length of trial, knew of the experiment several days before DeMarco testified, and knew that Walgreens was not going to disclose the photographs to Plaintiff. *See* ECF No. 159 at 2-3 (Attorney Sanzo telling Attorney Promislo that he will not send the photographs to Plaintiff's counsel and Attorney Promislo responding "Agreed"). Regardless of whether Defendant Bilco and their counsel had a duty to disclose to Plaintiff, their involvement in the scheme to conceal evidence and create a surprise on the final day of trial was not insignificant. When Bilco's counsel was notified of Walgreens's intent to present DeMarco's new testimony and not disclose the photographs beforehand, Attorney Promislo could have suggested that Walgreens inform the Court about its intention to present this evidence. Instead, Attorney Promislo "agreed" with Attorney Sanzo's plan to not disclose the photos to Plaintiff, noting that DeMarco would be "great to end with." *Id.*

Finally, Defendants argue that any potential prejudice to Plaintiff was cured by the Court's instruction to disregard DeMarco's testimony regarding the May 2 visit. Here, the Court agrees. After learning of Defendant Walgreens's failure to disclose the May 2 site visit, the Court instructed the jury to disregard that testimony. ECF No. 150 at 55:8-22. In its final instructions, the Court reminded the jury that any testimony stricken from the record is not evidence. ECF No. 163 at 39:13-17, 40:7-8. When determining whether a trial error prejudiced a party, "we presume that the jurors follow the instructions given to them by the trial court." *Robinson v. First State Community Action Agency*, 920 F.3d 182, 191 (3d Cir. 2019) (citing *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014)). This presumption can only be overcome "when there is an 'overwhelming possibility' that the jury was unable to follow the instructions and a likelihood that the evidence wrongfully admitted was 'devastating' to the other party." *Robinson v. First State Community Action Agency*, 920 F.3d 182, 191 (3d Cir. 2019) (citing *Greer v. Miller*, 483

U.S. 756, 766 n.8 (1987)). This Court does not find that there was an "overwhelming possibility" that the jury was unable to follow the instructions. As discussed, DeMarco's testimony was similar to testimony offered by multiple other witnesses. By the time DeMarco testified, both parties had presented mountains of testimony and evidence on the issue of the lock. In this context, DeMarco's testimony, while significant, was altogether redundant. The Court does not find that it is likely that the evidence was "devastating" to Plaintiff. Thus, the Court must presume that the jury followed its instructions and disregarded the testimony. Accordingly, Attorney Sanzo's actions and the surprise created did not prejudice Plaintiff nor prevent him from fully or fairly litigating his case. *See Robinson*, 920 F.3d at 191-92; Fed. R. Civ. P. 61 (no error by the court or a party is grounds for granting a new trial "unless justice requires otherwise").

### B. Declining to Strike the Entirety of DeMarco's Expert Testimony Was Not Error.

Plaintiff argues that because DeMarco's contradictory and misleading statements to the Court on May 9, 2022, cast sufficient doubt on his credibility, this Court erred by striking only the testimony regarding the May 2, 2022 experiment and should have instead stricken his testimony in its entirety and prevented DeMarco from continuing to testify. Additionally, because the jury was not permitted to hear the full extent of the questioning of DeMarco, and therefore not able to fully measure his credibility, the Court's decision not to strike the entire testimony was error and prejudiced Plaintiff. Defendants argue that there was no basis to strike DeMarco's entire testimony, and so there was no error. This Court finds that it was not error to decline to strike the entirety of DeMarco's testimony. DeMarco was properly offered at the time as an expert and, except for the opinions that were struck due to his surprise experiment,

provided opinions consistent with his expert report. This Court finds no grounds to exclude his testimony in its entirety.

Although it was not error to admit the remainder of DeMarco's testimony, the Court is compelled to note that DeMarco provided inaccurate and misleading testimony before the Court and directly to the Court. DeMarco first testified that he did not notify Defendants about his May 2 visit until May 9, the day that he testified. ECF No. 150 at 43:24-44:6. "I think I told them today. I think they found out just now." *Id.* at 44:5-6. When Plaintiff's counsel asked DeMarco how Defendants were able to make the photographs ready for use at trial if they did not receive them until that same day, DeMarco changed his testimony, admitting that he had sent the photographs to Walgreens's counsel on or about May 4. *Id.* at 44:12-16, 44:23-24. Plaintiff's counsel again asked DeMarco to explain when he first told Walgreens's counsel that he was visiting the store, specifically asking if he notified counsel on May 4. DeMarco replied, "I don't know if I talked to [Attorney Sanzo] that day (May 4) or if I talked to him the day after (May 5)." *Id.* at 44:25-45:2. The Court sent the jury out of the courtroom and directly asked DeMarco, *again*, to explain if he went to the store on his own without instruction from counsel. DeMarco replied, "I went there on my own, correct." *Id.* at 46:14-16. Attorney Sanzo eventually corrected DeMarco's untrue statements. *Id.* at 50:22-23.

DeMarco's statements are blatantly false and directly contradicted by the record. DeMarco did not make *only* one false or misleading statement, but made several, including a misleading statement directly in response to a question by the Court. The significance of DeMarco's inaccurate responses is best understood upon review of the relevant facts. At approximately 12 PM on Sunday, May 1, 2022, Attorney Sanzo emailed DeMarco asking if he opened the padlock when he previously visited the store. ECF No. 158 at 8-9. Then DeMarco

asked Attorney Sanzo to call him by phone. *Id.* Approximately two hours later, Attorney Sanzo emailed DeMarco again, telling him that he was cleared to visit the store and *instructing* him to "not tell anyone exactly what you plan to do on the ladder and make sure no is watching as you climb the ladder." *Id.* On May 2, DeMarco sent the photographs to Attorney Sanzo, who confirmed receipt of the photographs on May 3. *Id.* at 4, 11-13.

Although the Court would not fault an expert for mixing up the specific day he communicated with counsel, DeMarco *repeatedly* represented that he did not notify counsel until *after* he visited the store. This is entirely false. DeMarco was given multiple opportunities to correct the record and failed to do so. DeMarco directly represented to the Court that he "went there on [his] own" without instruction from counsel, when in fact, DeMarco communicated with Attorney Sanzo the day before the visit, after which Attorney Sanzo arranged the visit and provided DeMarco with specific instructions. All of these communications occurred mere days before DeMarco's testimony in court and should have been easily recalled.

The Court finds that DeMarco's statements regarding the May 2 visit are false, misleading, and lack any credibility. Because the Court instructed the jury to disregard the statements regarding the May 2 visit, the Court presumes the jury followed its instructions, and therefore will not grant a new trial on the basis of DeMarco's purposefully misleading statements regarding the May 2 visit. *See Robinson*, 920 F.3d at 191-92. Additionally, even if DeMarco's testimony had been excluded entirely, every issue that DeMarco testified to was already on the record and the subject of multiple defense witnesses' testimony. The Court finds no basis for prejudice to Plaintiff.

      **C.  Denying Plaintiff's Motion in Limine and Admitting Testimony Regarding Lack of Prior Complaints Was Not Error.**

Plaintiff claims that Defendant Bilco lacked sufficient foundation to offer testimony by its corporate designee Roger Joyce that the company had received no prior complaints, over the course of 70 years and 850,000 hatches sold, that the padlock hasp of the roof hatch was unsafe. Defendants respond that Joyce had the proper foundation and the evidence was properly entered. ECF Nos. 167, 168. This Court applies the Federal Rules of Evidence and federal law in analyzing this issue. *Forrest*, 424 F.3d at 354 (applying federal law to determine if evidence of lack of prior accidents was properly admitted).

Under the Federal Rules of Evidence, all relevant evidence is admissible—subject to certain limitations. *Id.* at 355 (citing Fed. R. Evid. 401, 402). The district court may exclude relevant evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. Although "[t]estimony concerning an alleged absence of prior accidents will usually satisfy the relevance threshold established by Rule 402," this Court must exercise particular caution because this type of evidence carries a heightened risk of unfair prejudice to the plaintiff. *Forrest*, 424 F.3d at 357-58. To establish the proper foundation, the party seeking to admit this type of evidence must show similarity between the product and circumstances at issue and the proffered testimony, the number of units sold and the extent of prior use, and that the witness likely would have known of prior accidents had they occurred. *Id.*

Here, in consideration of the particular facts and circumstances of this case, the Court finds that Defendant Bilco laid the necessary foundation for the testimony at issue. Joyce testified that with regard to the padlock hasp and roof hatch at issue in this action, he was aware of no complaints being made to Bilco in the 70 years that the product has been sold. ECF No. 154 at

22:7-12. Joyce clarified that he was only speaking to this specific type of roof hatch, including the models made of galvanized steel, aluminum, and stainless steel, explaining that the hatches operate the same regardless of their material. *See Id.* at 22:2-6. Joyce provided the approximate number of roof hatches sold and the timeframe from which they were sold and used. *Id.* at 21:10-21. Defendants also established Joyce's foundation for the proffered testimony: Joyce coordinated the company's response to product liability actions, continues to testify as the company's corporate designee in product liability actions, and held executive roles in manufacturing and engineering over the course of his 37-year career at Bilco. *See* ECF No. 154 at 3:23-4:4, 7:21-22, 9:22, 11:7, 30:5-21, and 31:1-25. This Court finds that Defendant Bilco established the necessary foundation for the testimony, and therefore there was no error in its admission.

### D.  Declining to Treat Bilco's Affirmative Defense as a Factual Admission Was Not Error.

At trial, Bilco's corporate designee Roger Joyce testified that Walgreens did not modify the roof hatch and that Walgreens did not do anything wrong by putting a padlock on the padlock hasp. ECF No. 154 at 39:14-41:10. Plaintiff objected because this testimony contradicted one of the affirmative defenses asserted in Bilco's answer. *Id.* at 39:25-40:13, 41:11-42:8; *see* ECF No. 10 at 18-19. In his motion, Plaintiff argues that the affirmative defense constituted an admission, and that the Court erred by allowing Joyce and Bilco to take a contrary position at trial. Bilco and Walgreens argue that an affirmative defense is not a factual statement or admission, and so Bilco should be permitted to take a contrary position at trial. Walgreens also argues that Bilco openly held its current position—that Walgreens had not done anything wrong—for several months prior to trial and that all of the testimony that Bilco presented at trial was

consistent with that position. In addition, Walgreens claims that Plaintiff also elicited testimony

from Joyce that contradicts Bilco's affirmative defense, and therefore Plaintiff should not be

permitted to hold Bilco to its affirmative defense only when it is least helpful to Plaintiff.

This Court did not err in permitting Joyce's testimony. "Judicial admissions are …

matters of fact which otherwise would require evidentiary proof…. A legal conclusion—e.g., a

that a party was negligent or caused an injury—does not qualify [as a] judicial admission." *In re*

*Pittsburgh Sports Assocs. Holding Co.*, 239 B.R. 75, 81 (Bankr. W.D. Pa. 2019) (citing *Glick v.*

*White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972) and *Giannone v. U.S. Steel Corp.*, 238

F.2d 544, 547 (3d Cir. 1956)). The affirmative defense at issue—a legal argument that

Walgreens, not Bilco was at fault—is not a factual admission. It is a legal theory, and Defendant

Bilco was not barred from later adopting a different legal position. *See Advantage Roofing and*

*Construction of La., Inc. v. Landmark Am. Ins. Co.*, No. 16-677, 2019 WL 919582 at *23 (M.D.

La. Feb. 25, 2019). In addition to permitting Joyce's testimony, this Court also allowed Plaintiff

to question Joyce regarding the affirmative defense and present the affirmative defense to the

jury multiple times. Admitting Joyce's testimony that was contrary to the affirmative defense

was not error.

## V.    CONCLUSION

The Court does not condone or excuse the actions of Defendants Walgreens and Bilco,

Attorneys Sanzo and Promislo, or Mr. DeMarco. But the Court cannot vacate a unanimous jury

verdict and grant a new trial, unless those errors and defects affect a party's substantial rights.

Here, the Court finds that Plaintiff suffered no prejudice nor was prevented from litigating his

case fully and fairly. For the foregoing reasons, the Court **DENIES** the Motion for New Trial.

An appropriate order follows.

BY THE COURT:

/s/ Chad F. Kenney

CHAD F. KENNEY, JUDGE