IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| **ROBERT MCMANUS,**<br>*Plaintiff,*<br><br>v.<br><br>**WALGREENS CO., INC., et al.,**<br>*Defendants.* | **CIVIL ACTION**<br><br><br>No. 21-2285 |

**MEMORANDUM**

**KENNEY, J.**                                                                                                       **MARCH 11, 2024**

## I. INTRODUCTION

Plaintiff Robert McManus brought a personal injury action claiming both products liability and negligence against Walgreen Eastern Co., Inc. ("Walgreens") and Bilco Industries ("Bilco") (collectively, "Defendants"). ECF No. 1. McManus worked for an HVAC contractor, and was hired to repair the HVAC system at a Walgreens location. Accessing the HVAC system required McManus to first climb up a stationary, vertical ladder with a Bilco LadderUp device. To reach the HVAC system, he would then have had to unlock a dangling padlock to open the roof hatch. McManus was attempting to reach up to open the padlock while on the ladder and alleged that he could not have gotten the key into the swinging lock with one hand; the lock could only be unlocked with the user reaching up from the ladder towards the ceiling. McManus used two hands to open the lock, lost the standard requirement of three points of contact with the ladder, lost his balance and fell. The key issue in the seven-day trial was whether McManus should have been able to unlock the hatch while maintaining three points of contact; that is, whether there was a strict products liability design defect or negligent manufacture of the locking mechanism. There

was abundant—and redundant—evidence on the issue containing both expert and lay opinion from Plaintiff and both Defendants.

After the seven-day trial, the jury returned a verdict in favor of Defendants. ECF No. 138. Significantly, for purposes of this opinion, during the trial, Walgreens's expert witness Jody DeMarco testified that he had conducted a site visit (at which he took photographs that were shown to the jury) and that he was able to unlock the lock with either one or two hands while maintaining three points of contact. Only on cross-examination did it emerge that the evidence was developed by DeMarco *sub rosa* during the first week of trial.

Upon questioning from Plaintiff's counsel during trial, DeMarco testified under oath that Attorneys Robert Sanzo and Jacqueline Promislo were not aware he was performing the additional site visit. ECF No. 171 at 8. This was later revealed to be a lie. The Court ordered further production of documents after the verdict, which demonstrated that Attorney Sanzo had in fact directed DeMarco to perform the additional site visit, and Attorney Promislo was aware of that site visit. *Id*. at 11. Both attorneys agreed not to reveal this to the Court or to Plaintiff's counsel, and neither corrected DeMarco's lie while he was on the stand. After learning that Walgreens had failed to disclose the clandestine site visit, the Court struck DeMarco's testimony regarding that site visit and instructed the jury that stricken testimony should not be considered as evidence. *Id*. at 23. At the time, the court was still under the impression that DeMarco proceeded to the site at his own direction. Still, even at that moment while DeMarco was still on the stand, Attorneys Sanzo and Promislo had effectively blindsided the Court, and in doing so diminished the process and demonstrated their disrespect for the sitting judge. It was only after the verdict, and the Court review of emails by and between Sanzo and DeMarco, and Sanzo and Promislo, that the Court became aware of the full depth of disrespect.

After the verdict, production of documents ordered by the Court exposed that defense counsel colluded and decided not to inform the Court or Plaintiff's counsel of this new evidence that went to the core of the case (and was not rebuttal evidence). Defendants' counsel knew that if the Court had been informed of the provenance of this evidence, it would not have been admitted.

The post-verdict production of emails revealed that Attorney Sanzo devised the improper site visit to shore up a perceived weakness in his case; namely, that his expert had not yet actually tested the locking mechanism by climbing the ladder and unlocking the lock while maintaining three points of contact with the ladder. He also instructed DeMarco to go to the site to do so but not tell Walgreens the purpose of his visit. Subsequently, Attorney Promislo agreed with Sanzo to keep these machinations secret from Plaintiffs' counsel, and inevitably, the Court. The breadth of this information did not come out until after the verdict was rendered.

Subsequently, McManus moved for a new trial on the basis of Defendants' conduct during the trial. Although the Court excoriated Sanzo, Promislo, and DeMarco for their conduct, it ultimately found that DeMarco's testimony regarding the site visit and demonstration "was altogether redundant," and thus while reprehensible under the circumstances, Defendants' conduct did not create sufficient prejudice to justify granting a new trial, which would have taken the case from the jury. ECF No. 171 at 24. After that motion was denied, McManus appealed the district court's decision to the Third Circuit on September 23, 2022. ECF Nos. 173, 174, 175. The Third Circuit affirmed the district court's decision. *See McManus v. Walgreens Co.*, 2023 WL 7298569, at *4 (3d Cir. Nov. 6, 2023). After the appeal concluded, McManus filed a motion for sanctions against Defendants for their conduct at trial (ECF No. 189), which was denied on the basis that the motion was untimely (ECF No. 196).

Following the decision on the motion for sanctions, despite a demonstrated record of unclean hands, Defendants did not simply walk away, but forged ahead and filed Bills of Costs. Walgreens sought $50,238.79 in costs and Bilco sought $81,774.03. ECF Nos. 198, 199. McManus filed objections to both Bills of Costs (ECF Nos. 200, 201), and Defendants each filed replies that revised their claimed costs to $39,776.87 for Walgreens and $57,186.66 for Bilco (ECF Nos. 202, 203).

## II.     TAXATION OF COSTS

Federal Rule of Civil Procedure 54(d) states that "unless . . . a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Only categories of costs specifically identified in 28 U.S.C. § 1920 can be permissibly taxed as costs.[1] *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987) ("§ 1920 defines the term 'costs' as used in Rule 54(d)."). There is a "strong presumption" in favor of allowing costs, and a district court denying costs must support that determination with "an explanation." *See In re Paoli R.R. Yard PCB Litig.*, 221 F.3d 449, 462 (3d Cir. 2000) (citations omitted). Notwithstanding the presumption, "Rule 54(d) permits the district court to exercise its discretion and refuse to award costs to the prevailing party." *Sheets v. Yamaha Motors Corp., U.S.A.,* 891 F.2d 533, 539 (5th Cir. 1990). Overriding the presumption is properly done "by a showing of bad faith or misconduct during the litigation." *Remington Prods., Inc. v. North Am. Philips, Corp.*, 763 F. Supp. 683, 687

---

[1] These categories are: "(1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title." 28 U.S.C. § 1920.

4

(D. Conn. 1991). "[T]he denial of costs to the prevailing party . . . is in the nature of a penalty for some defection on his part in the course of the litigation." *Smith v. Se. Penn. Transp. Auth.*, 47 F.3d 97, 99 (3d Cir. 1995) (citation omitted). Among the equitable factors that constitute such a defection are "the unclean hands, or bad faith . . . of the prevailing party." *Paoli*, 221 F.3d at 463.

As the Court has described in a previous memorandum, "Attorneys Sanzo and Promislo were in flagrant disregard for the Federal Rules of Civil Procedure, their representations to this Court were at best evasive and misleading, and at a critical point in the trial Defendants failed to provide the bare-minimum respect and candor owed to Plaintiff McManus, his attorneys, and this Court." ECF No. 171 at 1. For his part, DeMarco repeatedly "provided inaccurate and misleading testimony before the Court and directly to the Court." *Id.* at 25. In sum, these actions "clearly violated the spirit and letter of the Federal Rules of Civil Procedure and effected an unfair surprise." *Id.* at 20. There is no doubt that this course of conduct evinces bad faith and a profound defection from the standard litigation process. Defendants' victory in the case and failure to receive sanctions (on procedural grounds) does not expiate their abdication of duty as officers of the court.

Counsel must ask themselves whether it was it worth it. Unfortunately, there are those who would answer that a win is a win no matter how you get it. The Court will deny Walgreens's and Bilco's Bills of Costs in their entirety.[2] An appropriate Order will follow.

---

[2] The Court further notes that substantial portions of Defendants' Bills of Costs are clearly not recoverable by statute. For example, Bilco claims in excess of $30,000 in fees paid to Exponent, an expert witness firm. ECF No. 202-1 at 38. Walgreens claims over $11,000 for experts from FCNA Partners Forensic Consulting, Signature Rehabilitation Services, LLC, and Prizm Medical Resources, Ltd. ECF No. 203 at 78. They do so despite clear Supreme Court and Third Circuit precedent stating that these costs cannot be recovered without a specific statute authorizing them. *See Rimini Street, Inc. v. Oracle USA, Inc.*, 139 S. Ct. 873, 877-78 (2019) ("Rule 54(d) authorizes an award of 'costs' but does not expressly refer to expert witness fees. In defining what expenses qualify as 'costs,' §§ 1821 and 1920 likewise do not include expert witness fees. We therefore held that the prevailing party could not obtain expert witness fees" (citation omitted)); *Friedman v. Ganassi*, 853 F.2d 207, 209 (3d Cir. 1988) ("taxable costs [under Rule

                                    **BY THE COURT:**

                                    /s/ Chad F. Kenney

                                  **CHAD F. KENNEY, JUDGE**

---

54(d)] . . . do not include such litigation expenses as attorney's fees and expert witness fees in excess of the standard daily witness fee." (citation omitted)). This is not an exhaustive list of Defendants' untaxable costs, but serves to illustrate their posture in this case.